COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                 FORT
WORTH

 

 

                                        NO.
2-07-178-CV

 

 

IN THE INTEREST OF M.L.J., A CHILD                                                     

 

                                                                                                        

 

                                              ------------

 

            FROM
THE 211TH DISTRICT COURT OF DENTON COUNTY

 

                                              ------------

 

                                MEMORANDUM
OPINION[1]

 

                                              ------------

I.  Introduction








Appellants William J. and
Monica J. appeal the termination of their parental rights to their son,
M.L.J.  In four issues, Monica argues
that the evidence is legally and factually insufficient to support the
termination order and that the trial court erred by entering a finding that she
failed to comply with the trial court=s orders.  In two issues,
William argues that the evidence is legally and factually insufficient to
support the jury=s
affirmative termination findings under subsections (N) and (O) of section
161.001(1) of the family code.  We will
affirm.

II.  Factual and Procedural Background

M.L.J. is the biological son
of William and Monica, who are married and both mildly mentally retarded.  M.L.J. was born on July 14, 2006, and is William=s and Monica=s fifth
child. 
Monica=s mother has
custody of their first child; they voluntarily relinquished their parental
rights to their other three children.








The hospital released M.L.J
to William and Monica on or about July 18, 2006, and William and Monica took
him home with them.  Joel Nickerson, an
investigator for Child Protective Services (CPS) then, received a report the
following day that Monica had given birth to M.L.J., that there was a history
of involvement between Monica, William, and CPS, and that there were concerns
about Monica=s and
William=s ability to care for M.L.J. 
Nickerson visited their home the next day and met only William there.  Nickerson was familiar with William=s and Monica=s CPS
history, and he Awas looking
for things that might have changed with the family, ways that they might have
improved,@ in addition
to Aindicators that they still had problems caring for their children.@  Nickerson inspected the house
and Awasn=t concerned
about [its] condition . . . in particular,@ although it had clutter and a number of cats, but his conversation
with William gave him concern because Nickerson could not get William to tell
him any particulars about what he and Monica were doing to care for M.L.J.

Nickerson learned shortly
after his first visit to William=s and Monica=s residence
that Monica and M.L.J. were staying with Monica=s mother, which CPS supported because it was CPS=s position that M.L.J. should either reside with Monica=s mother or near her so that Monica and William would have someone to
provide assistance in caring for M.L.J. 
According to Nickerson, 

our hope was that - - that
Monica would continue staying with [her mother].  I think it had been made clear to her in the
past couple of [cases] that if she had let [her mother] have an active role in
seeing her children, helping care for her children on a day-to-day basis, that
was fine.  So our hope was that she was
going to stay with [her mother] for a while at least.








A day or two thereafter,
however, Nickerson learned that Monica had returned to her home with M.L.J., so
Nickerson visited their residence once again on or about July 25, 2006.  While Nickerson visited with Monica briefly,
he observed that she was not paying any attention to M.L.J as she held him and
that his head was Asort of
rolling around.@  Having Aextreme concerns@ about risks
to M.L.J.=s health,
safety, or both and without a court order, Nickerson took possession of M.L.J.
and removed him from William=s and Monica=s
residence.  When Nickerson told Monica
that he was removing M.L.J., Monica responded, ATake him.  I don=t even want him.@

Appellee Department of Family
and Protective Services (DFPS) filed its petition for protection of M.L.J., for
conservatorship, and for termination in suit affecting the parent-child
relationship on July 26, 2006.  DFPS
alleged that the trial court should terminate William=s and Monica=s parental
rights to M.L.J. if reunification could not be achieved.

The trial court conducted a
family code section 262.201 adversary hearing on August 4, 2006, and entered a
temporary order naming DFPS temporary managing conservator of M.L.J. and
William and Monica temporary possessory conservators with two hours of
supervised visitation every other week.  See
Tex. Fam. Code Ann. ' 262.201 (Vernon Supp. 2007). 
The trial court ordered William and Monica to contact Denton County
Mental Health Mental Retardation (MHMR) for an intake evaluation and to follow
all recommendations made by MHMR, to participate in and successfully complete parenting
classes, and to apply for services with the Texas Rehabilitation Commission
(TRC), among other things.  The order
further specifically stated as follows:








The
Court finds and hereby notifies the parents that each of the actions required
of them below are necessary to obtain the return of the subject child, and
failure to fully comply with these orders may result in the restriction or
termination of parental rights.

 

William=s and Monica=s trial
began on May 14, 2007.  Both testified
that they visited M.L.J. only twice since his removalConce at the beginning of the case (on or about August 14, 2006) and
once at some point during the week before trial.  William and Monica also testified that they
did not contact MHMR, attend parenting classes, or apply for services with the
TRC as ordered by the trial court; Monica opined that she Ajust didn=t think that
[the services] would do any good@ even though the trial court had told her and William that they had to
perform the services because they were court ordered.  Monica testified she was aware that the
purpose of the services to be completed was to have M.L.J. returned to her, and
William agreed that he had been advised at all of the hearings concerning
M.L.J.=s case about what he had to do to regain custody of M.L.J.

Nichelle Wiggins, a licensed
clinical psychologist, testified about the psychological evaluations that she
had conducted of William and Monica for CPS. 
Wiggins concluded that there would be a very high probability of risk to
a small child in the care of William and Monica without appropriate support and
assistance.








CASA worker Lori Powell
testified that she discussed with William and Monica at the adversary hearing
the services that the trial court had ordered them to perform and that Monica
told her that Ashe was not
going to do the services that CPS was going to ask her to do.@  Powell testified that she had
asked Monica Amany times@ throughout the pendency of the case for names and phone numbers of
individuals who were willing to provide assistance if M.L.J. was returned to
William and Monica, but Monica refused to give her any names.  Due to concerns about M.L.J.=s safety and considering William=s and Monica=s ability to
care for M.L.J. and provide a safe environment, Powell testified that it is in
M.L.J.=s best interest that William=s and Monica=s parental
rights to him be terminated.

CPS caseworker Shelby Johnson
worked on M.L.J.=s case and
testified that, having attended the adversary hearing, it was her understanding
that William and Monica would not be performing any services.  To Johnson=s knowledge, they also never obtained any support in caring for
M.L.J.; William and Monica refused any type of help from the very beginning of
M.L.J.=s case. Johnson opined that it is in M.L.J.=s best interest to terminate William=s and Monica=s parental
rights to him.








The jury found by clear and
convincing evidence that William and Monica had constructively abandoned
M.L.J., who had been in the temporary managing conservatorship of DFPS or an
authorized agency for not less than six months, and DFPS or an authorized
agency made reasonable efforts to return M.L.J. to William and Monica, William
and Monica had not regularly visited or maintained significant contact with
M.L.J., and William and Monica had demonstrated an inability to provide M.L.J.
with a safe environment; that William and Monica failed to comply with the
provisions of a court order that specifically established the actions necessary
for them to obtain the return of M.L.J., who had been in the permanent or
temporary managing conservatorship of DFPS for not less than nine months as a
result of his removal from William and Monica for the abuse or neglect of
M.L.J.; and that termination of the parent-child relationship between William
and Monica and M.L.J. is in M.L.J.=s best interest.  See Tex. Fam. Code Ann. '' 161.001(1)(N), (O), 161.001(2) (Vernon Supp. 2007).  The trial court signed an order consistent
with the jury=s
affirmative findings terminating the parental rights of William and Monica to
M.L.J.  The trial court later denied
William=s and Monica=s motions
for new trial and determined that their appeals are frivolous.  This appeal followed.

 

 

 

 








III.  Frivolous Determination

DFPS
initially argues that we may not address William=s and Monica=s arguments
because neither William nor Monica have specifically challenged the trial court=s post-trial determination that their appeals are frivolous.  See Tex.
Fam. Code Ann. ' 263.405(d)(3).  Both William and Monica filed appellate
briefs raising numerous issues, however. 
We will therefore treat William=s and Monica=s briefs as
challenging not only the termination order but also the trial court=s finding that the appeals are frivolous.

In determining whether an
appeal is frivolous, Aa judge may
consider whether the appellant has presented a substantial question for
appellate review.@  Tex.
Civ. Prac. & Rem. Code Ann. ' 13.003(b) (Vernon 2002); Tex.
Fam. Code Ann. '
263.405(d)(3).  AIt is well established, however, that a proceeding is >frivolous= when it >lacks an arguable basis either in law or in fact.=@ De La Vega v. Taco Cabana, Inc., 974 S.W.2d 152, 154 (Tex.
App.CSan Antonio 1998, no pet.).  We
review a trial court=s finding of
frivolousness under an abuse of discretion standard.  Id.; In re K.D., 202 S.W.3d
860, 866 (Tex. App.CFort Worth
2006, no pet.).








We have reviewed the entire
record on appeal and thoroughly considered William=s and Monica=s
arguments.  The record shows an arguable
basis in law or fact for William=s and Monica=s challenges
to the trial court=s
termination order.  William and Monica
have accordingly presented a substantial question for appellate review.  See Tex.
Civ. Prac. & Rem. Code Ann. ' 13.003(b); Tex. Fam. Code Ann.
' 263.405(d)(3); De La Vega, 974 S.W.2d at 154.  We hold that William=s and Monica=s appeal
from the termination order is not frivolous and that the trial court abused its
discretion in so finding.

IV.  Termination Order Error













In Monica=s first issue, she argues that the trial court erred by finding that
she failed to comply with the trial court=s orders requiring her to participate in certain services because the
termination order provides that she failed to comply with the provisions of a
court order that specifically established the actions necessary for the Afather,@ not her
(the mother), to obtain the return of M.L.J.[2]  Although Monica did not assert this argument
in her motion for new trial, we have the power to reform a judgment when we
have the necessary information to do so. 
See Tex. R. App. P.
43.2(b); Asberry v. State, 813 S.W.2d 526, 529 (Tex. App.CDallas 1991, pet. ref=d); In re M.D., No. 05-06-00779-CV, 2007 WL 1310966, at *1B2 (Tex. App.CDallas May
7, 2007, no pet.).  It is apparent that
this is a clerical error in the drafting of the termination order; the error is
located within the trial court=s finding that termination of Monica=s parent-child relationship with M.L.J. is appropriate under family
code section 161.001(1)(O) and under the heading, ATermination of Respondent Mother [Monica=s] Parental Rights,@ which is consistent with the jury=s affirmative section 161.001(1)(O) termination ground finding.  And as DFPS points out, the record reflects
that Monica knew and understood that the trial court had ordered her near the
beginning of the case to participate in a number of services necessary for her
to obtain the return of M.L.J. 
Accordingly, we reform the fourth paragraph of number A6A in the
trial court=s May 24,
2007 termination order as indicated by the following italicized word: Afailed to comply with the provisions of a court order that
specifically established the actions necessary for the mother to obtain
the return of the child.@  Having reformed the termination order, we
overrule Monica=s first
issue.

V.  Sufficiency Arguments

William argues in his first
issue and Monica argues in her second issue that the evidence is legally and
factually insufficient to support the trial court=s termination finding under family code section 161.001(1)(O) because
DFPS failed to prove by clear and convincing evidence that it removed M.L.J.
from William and Monica for abuse or neglect. 
Monica further argues in her fourth issue that the evidence is legally
and factually insufficient to support the trial court=s finding that termination of her parental rights is in M.L.J.=s best interest.  DFPS responds
that the evidence is legally and factually sufficient to support the section
161.001(1)(O) termination finding and best interest finding. 

A.     Standard of Review

Termination of parental
rights is a drastic remedy and is of such weight and gravity that due process
requires the petitioner to justify termination by clear and convincing
evidence.  TEX. FAM. CODE ANN. '' 161.001, 161.206(a); In re J.F.C., 96 S.W.3d 256, 263 (Tex.
2002).  Clear and convincing evidence is
defined as the Ameasure or
degree of proof that will produce in the mind of the trier of fact a firm
belief or conviction as to the truth of the allegations sought to be
established.@  Tex.
Fam. Code Ann. ' 101.007
(Vernon 2002).








In reviewing the evidence for
legal sufficiency in parental termination cases, we must determine whether the
evidence is such that a fact-finder could reasonably form a firm belief or
conviction that the grounds for termination were proven.  In re J.P.B., 180 S.W.3d 570, 573
(Tex. 2005).  In reviewing the evidence
for factual sufficiency, we must give due deference to the fact-finder=s findings and not supplant the verdict with our
own.  In re H.R.M., 209 S.W.3d
105, 108 (Tex. 2006).  We must determine
whether, on the entire record, a fact-finder could reasonably form a firm
conviction or belief that the parent violated the relevant conduct provision of
section 161.001(1) and that the termination of the parent=s parental rights would be in the best interest of the child.  In re C.H., 89 S.W.3d 17, 28 (Tex.
2002).  If, in light of the entire
record, the disputed evidence that a reasonable fact-finder could not have
credited in favor of the finding is so significant that a fact-finder could not
reasonably have formed a firm belief or conviction in the truth of its finding,
then the evidence is factually insufficient. 
H.R.M., 209 S.W.3d at 108.

B.     Section 161.001(1)(O)
Evidentiary Sufficiency Challenge








The court may order
termination of the parent-child relationship if the court finds by clear and
convincing evidence that the parent has failed to comply with the provisions of
a court order that specifically established the actions necessary for the
parent to obtain the return of the child who has been in the permanent or
temporary managing conservatorship of DFPS for not less than nine months as
a result of the child=s removal from the parent under family code chapter 262 for the abuse
or neglect of the child.  See Tex.
Fam. Code Ann. '
161.001(1)(O).  Under section 262.104, if
there is no time to obtain a temporary restraining order or attachment before
taking possession of a child consistent with the health and safety of that
child, an authorized representative of DFPS may take possession of a child
without a court order on personal knowledge of facts or on information
furnished by another that has been corroborated by personal knowledge of facts
that Awould lead a person of ordinary prudence and caution to believe that
there is an immediate danger to the physical health or safety of the child.@  Id. ' 262.104(a)(1), (2) (Vernon Supp. 2007).








Here, the primary thrust of
William=s and Monica=s arguments
is that M.L.J. was not removed for any actual abuse or neglect but rather
because of a risk or fear of abuse or neglect. 
The evidence showed that CPS had strong concerns about William=s and Monica=s ability to
safely care for M.L.J.  CPS had removed
their previous four children, and William and Monica relinquished their
parental rights to three of the children. 
Nickerson opined that William and Monica did not have the skills
necessary to care for M.L.J. on a day-to-day basis, and he testified that there
are Aextreme concerns@ about risks
to M.L.J., including a concern that William and Monica would flee the county as
they had when they moved away from Dallas County to avoid Dallas CPS.  At Nickerson=s first visit to their residence, with the exception of how often
M.L.J. had been eating and sleeping, Nickerson was unable to get William to
tell him any particulars about what he and Monica were doing to care for
M.L.J.  And during his second visit to
their residence, M.L.J.=s head was Arolling around@ as Monica
held him and spoke to Nickerson. 
Although Nickerson sought to observe any Aindicators of change@ demonstrating that his concerns for M.L.J.=s care and safety had been resolved during his visits to their residence,
he was unpersuaded that William and Monica had made any significant progress.








Nickerson testified that he
removed M.L.J. from William=s and Monica=s residence
not only because of their Alack of skills,@ which was
due in large part to their mental retardation, but also because they had no
desire to seek help with caring for M.L.J. 
According to Nickerson, CPS had told Monica Anumerous times@ that she
needed assistance (someone other than William) raising her children, including
M.L.J.  Monica told CPS that she would
have someone help her care for her children, Aand she didn=t follow
through.  And so in this particular case,
she had also said she would have [her mother] help her, and then all of [a]
sudden she showed up in Denton again on her own.@  Powell=s and Johnson=s testimony
that Monica had indicated an intent not to participate in the court-ordered
programs is consistent with Monica=s noncompliance with CPS=s plan that she and William accept help with caring for M.L.J.  The significance of CPS=s desire that William and Monica have assistance in caring for M.L.J.
is apparent because Nickerson testified that he would not have removed M.L.J.
if Monica and William sought help with M.L.J. 
He testified as follows:

[DFPS
attorney]:  If Monica had decided to stay
with a family member, what was the Department=s
position on that?  What would have been
that option?

 

[Nickerson]:
It would have been my . . . decision to leave her alone as long as she was
willing to stay with [her mother].  That
was a good situation as far as we were concerned, and I would have - - I would
have left the case there.

 








Wiggins=s testimony corroborated Nickerson=s (and CPS=s) concern
about the danger to M.L.J.=s health or safety.  She
testified that Monica had previously told her that William once struck her in
the stomach while she was pregnant in 2003, that William once shook one of
their children because he was angry, and that she did not feel like the
children would be safe around him. Wiggins explained that William and Monica
are both mildly mentally retarded, that Monica=s emotional evaluation demonstrated that she has difficulty accepting
that she needs assistance with children, and that there Awould be a very high probability of risk@ to a child in William=s and Monica=s care
without support and assistance.

The evidence demonstrated
that Nickerson had personal knowledge of facts or information furnished by
another that had been corroborated by personal knowledge of facts that Awould lead a person of ordinary prudence and caution to believe that
there is an immediate danger to the physical health or safety of@ M.L.J.  See id.  Considering the appropriate standards of
review, we hold that the evidence is legally and factually sufficient to
support the trial court=s section
161.001(1)(O) termination finding.  We
overrule William=s first
issue and Monica=s second
issue.

C.     Best Interest

Prompt and permanent
placement of the child in a safe environment is presumed to be in the child's
best interest.  Tex. Fam. Code Ann. ' 263.307(a) (Vernon 2002). 
There is also a strong presumption that keeping a child with a parent is
in the child=s best
interest.  In re R.R., 209 S.W.3d
112, 116 (Tex. 2006).  Nonexclusive
factors that the trier of fact in a termination case may use in determining the
best interest of the child include:

(1)    the desires of the child;

 

(2)    the emotional and physical needs of the child now and in the
future;

 








(3)    the emotional and physical danger to the child now and in the
future;

 

(4)    the parental abilities of the individuals seeking custody; 

 

(5)    the programs available to assist these individuals to promote the
best interest of the child;

 

(6)    the plans for the child by these individuals or by the agency
seeking custody;

 

(7)    the stability of the home or proposed placement;

 

(8)    the acts or omissions of the parent which may indicate that the
existing parent‑child relationship is not a proper one; and

 

(9)    any excuse for the acts or
omissions of the parent.

Holley v. Adams, 544 S.W.2d 367, 371B72 (Tex. 1976).  These factors
are not exhaustive; some listed factors may be inapplicable to some cases;
other factors not on the list may also be considered when appropriate.  C.H., 89 S.W.3d at 27.








Here, Monica argues that the
evidence was insufficient to support the trial court=s best interest finding because DFPS presented no evidence of M.L.J.=s desires and physical or emotional needs and because she was taking
advantage of programs Ato assist
her with her caring for@ M.L.J.,
which included Social Security Disability benefits, Medicaid, WIC, and public
transportation.  However, in light of the
evidence that William and Monica refused to cooperate with CPS=s plan that they have assistance with caring for M.L.J., that multiple
individuals considered there to be a high risk to M.L.J. or any child in their
care, and that their ability to appropriately care for a child is significantly
affected by their mental retardation, the factors including the emotional and
physical needs of M.L.J. now and in the future, the emotional and physical
danger to M.L.J. now and in the future, and the programs available to assist
William and Monica in promoting the best interest of M.L.J. all weigh heavily in
favor of the finding that termination is in M.L.J.=s best interest.  Considering
the appropriate standards of review, we hold that the evidence is legally and
factually sufficient to support the trial court=s finding that termination of Monica=s parental rights to M.L.J. is in M.L.J.=s best interest.  Accordingly,
we overrule Monica=s fourth
issue.

Because we have held that the
evidence is legally and factually sufficient to support the trial court=s section 161.001(1)(O) finding, we need not determine whether the
evidence is legally and factually sufficient to support the trial court=s section 161.001(1)(N) finding, which William and Monica also
challenge.  See In re J.L., 163
S.W.3d 79, 84 (Tex. 2005) (stating that Petitioner must establish only one
ground listed under subsection 161.001(1)).

 

 








VI.  Conclusion

Having overruled William=s first issue and Monica=s first, second, and fourth issues and determined that we need not
consider William=s second
issue and Monica=s third
issue, we affirm the trial court=s judgment.

 

 

DIXON W. HOLMAN

JUSTICE

PANEL M: 
DAUPHINOT, HOLMAN, and WALKER, JJ.

DELIVERED: 
May 1, 2008











[1]See Tex. R.
App. P. 47.4.





[2]DFPS argues that Monica failed to
preserve for appellate review her first issue that termination under section
161.001(1)(O) was erroneous, part of her third issue challenging the
sufficiency of the evidence to support the jury=s affirmative section 161.001(1)(N)
termination ground finding, and her fourth issue that termination is not in
M.L.J.=s best interest because she did not
specifically include these arguments in a timely filed statement of points or
in a statement combined with a motion for new trial.  See Tex. Fam. Code Ann. ' 263.405(i)
(stating that an appellate court may not consider any issue that was not
specifically presented to the trial court in a timely filed statement of the
points on which the party intends to appeal or in a statement combined with a
motion for new trial).  In a recent en banc decision,
this court held that family code section 263.405(i) is void as a violation of
the separation of powers provision of the Texas constitution.  See In re D.W., No. 02-06-00191-CV,
2008 WL 467328, at *12 (Tex. App.CFort Worth Feb. 19, 2008,
pet. filed) (en banc).  We are bound to
follow our own precedent, so we will consider the merits of Monica=s
first, third, and fourth issues to the extent they are necessary to the
resolution of her appeal.  See Tex. R. App. P. 47.4.